UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TAMI B.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. C18-5605 JCC

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND DISMISSING THE CASE WITH PREJUDICE

Plaintiff seeks review of the denial of her application for Disability Insurance Benefits. Plaintiff contends the ALJ erred by rejecting her treating doctors' opinions. Dkt. 12. As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

I.     BACKGROUND

Plaintiff is currently 50 years old, has a high school education, and has worked as a personnel clerk, receptionist, and administration clerk. Dkt. 7, Administrative Record (AR) 31. Plaintiff applied for benefits in January 2015. AR 84. She alleges disability as of March 1, 2012. AR 17, 47. Plaintiff's applications were denied initially and on reconsideration. AR 98, 99. After the ALJ conducted a hearing in March 2017, the ALJ issued a decision finding

ORDER AFFIRMING THE
COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 1

Plaintiff not disabled. AR 43, 15-32.

II.  THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

Step one:  Plaintiff has not engaged in substantial gainful activity since November 2014.

Step two:  Plaintiff has the following severe impairments: degenerative disc disease, mild osteoarthritis of the left hip, obesity, fibromyalgia, metatarsalgia, post-traumatic stress disorder (PTSD), anxiety disorder, and depression.

Step three:  These impairments do not meet or equal the requirements of a listed impairment.[2]

Residual Functional Capacity:  Plaintiff can perform light work.  She cannot climb ladders, ropes, or scaffolds.  She can occasionally climb stairs and ramps.  She can frequently balance, kneel, and crouch, and occasionally stoop and crawl.  She must avoid concentrated exposure to extreme cold, extreme heat, and hazards.  Plaintiff has no understanding and memory limitation, but would be off-task 5 percent of the workday due to periodic interruptions in concentration, persistence, and pace for completing both simple and detailed tasks.  She can have occasional, brief, superficial contacts with the general public and coworkers.  She would benefit with help on planning and goal setting.

Step four:  Plaintiff cannot perform past relevant work.

Step five:  As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, she is not disabled.

AR 17-32.  The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision.  AR 1.

III.  DISCUSSION

This Court may set aside the Commissioner's denial of Social Security benefits only if the ALJ's decision is based on legal error or not supported by substantial evidence in the record as a whole.  *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017).  Each of an ALJ's findings

---

[1] 20 C.F.R. § 404.1520.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

ORDER AFFIRMING THE
COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 2

must be supported by substantial evidence. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one interpretation, the Commissioner's interpretation must be upheld if rational. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005). This Court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

Plaintiff contends the ALJ erred by rejecting the opinions of two treating doctors. Dkt. 12. A treating doctor's opinion is generally entitled to greater weight than an examining or nonexamining doctor's opinion. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). An ALJ may only reject the uncontradicted opinion of a treating doctor by giving "clear and convincing" reasons. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Even if a treating doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by stating "specific and legitimate" reasons. *Id.* The ALJ can meet this standard by providing "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citation omitted). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725.

### A. Sarah Allen, Psy.D.

On January 25, 2017, treating psychologist Dr. Allen stated that Plaintiff experiences "symptoms of anxiety and depression which impact her ability to function in all areas of her life," and opined that she would not be "able to engage in any work-related activities on a sustained basis." AR 755. On January 31, 2017, Dr. Allen filled out a Mental Capacity Assessment, opining that Plaintiff would have marked to extreme limitations in several aspects of memory, concentration, attention, persistence, social interaction, and adaptation. AR 764-66. Plaintiff would miss more than four days of work per month. AR 765.

The ALJ gave "limited weight" to Dr. Allen's opinions because they were inconsistent with her own and other doctors' benign findings in the longitudinal record and with Plaintiff's activities. AR 30. The ALJ also stated that Dr. Allen "appears to have advocated on her client's behalf…." *Id*. However, absent "evidence of actual improprieties" an ALJ "may not assume that doctors routinely lie in order to help their patients collect disability benefits." *See Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995). The ALJ does not cite any evidence of actual improprieties and thus, to the extent the ALJ intended to identify Dr. Allen's advocacy as a reason to discount her opinions, this reason is unsupported by substantial evidence. The ALJ's remaining reasons are addressed below.

#### 1. Medical Evidence

Incongruity between a treating physician's opinions and her own medical records is a "specific and legitimate reason for rejecting" the opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Incongruity between her opinions and the medical evidence in the rest of the record can also be an adequate reason to reject the opinions. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (that opinions were "contradicted by other

statements and assessments of [claimant's] medical conditions" and "conflict[ed] with the results of a consultative medical evaluation" were specific and legitimate reasons to discount the opinions).

Dr. Allen had treated Plaintiff for nearly a year when she issued her opinions. See AR 755. She summarized her observations over that time period as follows: Plaintiff "has frequently been either tearful and anxious or short-tempered and irritable. She is easily overwhelmed and has moments of 'going blank' and losing track of what she is talking about in session. She often cannot tolerate engaging in therapeutic dialogue for the entire hour and has on several occasions ended our session 10-15 minutes early due to exhaustion." AR 909.[3] Dr. Allen's March 2016 intake notes are included in the record. AR 714-15. Dr. Allen observed normal dress, motor activity, insight, judgment, affect, orientation, memory, attention/concentration, thought content, perception, flow of thought, interview behavior, and speech. AR 714. Mood was dysphoric. *Id*. Other clinical observations were similarly largely normal. In early 2015, Kathleen M. Bruhn, Ph.D., examined Plaintiff and found almost entirely normal mental status examination results. AR 546-47. Orientation, speech, thought process and content, cognitive processes, insight, judgment, memory, intellectual functioning, attention, and dress/appearance were within normal limits, and mood was appropriate, but also depressed and anxious. AR 546. Examinations by treating provider Susan E. Jamiel, ARNP, were also largely normal. AR 664-68.

The ALJ's findings, that Dr. Allen's opinions conflicted with the medical record and her own findings, were supported by substantial evidence and were specific and legitimate reasons to

---

[3] Dr. Allen also noted Plaintiff's self-reported forgetfulness, obsessive thoughts, and needing support. AR 909. But the ALJ discounted Plaintiff's self-reports and Plaintiff does not challenge the ALJ's conclusion. *See* AR 22.

ORDER AFFIRMING THE
COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 5

discount the opinions. Repeated findings of normal memory conflict with Dr. Allen's opinion that Plaintiff had "extreme" limitation in the ability to understand and remember detailed tasks and "marked" limitation in the ability to understand and remember "very short and simple instructions." AR 764; *cf.* AR 546, 714. Repeated findings of normal attention and concentration conflict with Dr. Allen's opinions that Plaintiff had "extreme" limitation in the ability to maintain attention and concentration for extended periods and "marked" limitation in the ability to carry out "very short and simple instructions." AR 764; *cf.* AR 546, 664-66, 668, 714. Repeated observations of normal dress and appearance undermine the opined "extreme" limitation in the "ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness." AR 765; *cf.* AR 546, 664-66, 668, 714. Although Dr. Allen made observations such as tearfulness and irritability during therapeutic sessions, it is the ALJ's role to weigh the medical evidence, and the ALJ permissibly determined that these observations were outweighed by Dr. Allen's and other providers' extensive normal findings throughout the record.

The Court concludes that the ALJ did not err by discounting Dr. Allen's opinions based on conflict with the record.

### 2. Plaintiff's Activities

Conflict with a claimant's activities "may justify rejecting a treating provider's opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). The ALJ noted Plaintiff was able to "perform household chores, use the computer, interact with people on Facebook, visit her treatment providers, drive a car, prepare meals, handle her finances, shop online, play games, read, and watch television…." AR 30. The ALJ did not explain how any of these activities contradict Dr. Allen's opinions, and the Commissioner's briefing offers no illumination. *See* AR

30; Dkt. 16 at 8. While the Court may draw reasonable inferences from an ALJ's decision, here the relationship between activities and opined limitations is unclear. *See Magallanes*, 881 F.2d at 755. For example, the ability to "interact" with people online does not conflict with the opined difficulty interacting with the public or coworkers in person, and the ability to perform household chores or read, on her own schedule and with breaks as needed, says little about the opined difficulty completing a normal work day or work week. AR 765. The Court concludes the ALJ erred by discounting Dr. Allen's opinions based on Plaintiff's activities.

### 3. Harmless Error

Including erroneous reasons was harmless because the remaining reasons, conflict with Dr. Allen's findings and the rest of the medical record, were specific and legitimate reasons to discount her opinions. *See Molina*, 674 F.3d at 1117 (error harmless if "inconsequential to the ultimate disability determination"); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008) (inclusion of erroneous reasons to discount claimant's testimony was harmless because "remaining valid reasons supporting the ALJ's determination are not 'relatively minor'").

The Court concludes the ALJ did not err by discounting Dr. Allen's opinions.

**B.     Elizabeth Cruz, M.D.**

In February 2017, treating physician Dr. Cruz diagnosed fibromyalgia, chronic low back pain, Meniere's disease, scoliosis, and agoraphobia with anxiety, and opined that Plaintiff's symptoms were "[c]onstantly" severe enough to interfere with attention and concentration. AR 788. Dr. Cruz opined that Plaintiff could sit 6 hours and stand/walk zero hours per day, would need 15-minutes breaks once per hour, and would miss more than four days of work per month. AR 788-89. Plaintiff had manipulative limitations and could only lift 10 pounds or less. AR

1 | 788.

2 | The ALJ gave "little weight" to Dr. Cruz's opinions because they were inconsistent with
3 | her own clinical notes and based instead on Plaintiff's symptom magnification in an effort to
4 | obtain narcotics, and inconsistent with Plaintiff's activities. AR 27-28.

5 | 1. Medical Records

6 | Substantial evidence supports the ALJ's finding that Dr. Cruz's treatment notes conflict
7 | with her opinions. Dr. Cruz documented normal gait and full lower extremity strength, in
8 | contrast to her opinion that Plaintiff could stand/walk zero hours per day and walk less than one
9 | block at a time. AR 835, 788. Dr. Cruz documented no hand or finger abnormalities, and full
10 | upper extremity strength, inconsistent with the severe manipulative restrictions she opined. AR
11 | 835, 788.

12 | Plaintiff argues that the ALJ's analysis reflects a misunderstanding of fibromyalgia, and
13 | that her regular reports of pain support Dr. Cruz's opinions. Dkt. 12 at 12-13. However, a
14 | fibromyalgia diagnosis is not dispositive in a Social Security disability determination; a claimant
15 | must show functional limitations. And Plaintiff does not challenge the ALJ's discounting of her
16 | self-reports. *See* AR 22. Plaintiff is correct that fibromyalgia is assessed on the basis of a
17 | patient's "reports of pain and other symptoms," that an ALJ should consider "longitudinal
18 | records," and that "tender-point examinations themselves constitute objective medical evidence
19 | of fibromyalgia." *Revels*, 874 F.3d at 663 (quoting *Benecke v. Barnhart*, 379 F.3d 587, 591 (9th
20 | Cir. 2004) and SSR 12-2p, 2012 WL 3104869 (S.S.A. 2012)). However, Dr. Cruz's
21 | examinations did not show appropriate tender-point objective evidence supporting her opinions.
22 | At an initial visit in February 2016, Dr. Cruz performed an extensive examination of Plaintiff's
23 | whole body, but only elicited "mild tenderness over R[ight] biceps tendon" and mild tenderness

on a cut on her finger. AR 835. Follow-up visits did not include such examinations. *See* AR 849-907. The longitudinal record also does not provide support for Dr. Cruz's opinions. Plaintiff had a single visit with rheumatologist Esther Hwang, M.D., who documented 14 of 18 fibromyalgia tender points, as well as left foot and ankle swelling. AR 814. Treating provider Morgan N. Powell, ARNP, conducted nine musculoskeletal examinations between July 2012 and March 2015. She typically found moderate tenderness in the low back, occasionally only mild tenderness and, in one visit, no back tenderness at all. AR 624, 619, 611, 607, 604, 591-92, 588, 571, 562.

In *Revels*, a rheumatologist found the required 11 or more out of 18 tender points in five appointments and a physical therapist conducted a three-and-a-half hour functional capacity evaluation. 874 F.3d at 663, 666. In *Benecke*, at least three rheumatologists diagnosed and treated the claimant for fibromyalgia over the course of at least two years. 379 F.3d at 591. Here, in contrast, a single rheumatologist performed a single examination finding the requisite number of tender points. Plaintiff was treated for pain but, because the rheumatologist was not treating her, there is little clarity as to whether treatments targeted fibromyalgia or her other impairments. *See*, *e.g.*, AR 835 ("had long discussion re: treatment options for fibromyalgia and chronic pain syndrome"). Dr. Cruz's opinion does not clarify whether limitations are due to fibromyalgia or other impairments. On this record, the ALJ permissibly concluded that Dr. Cruz's opinions of extreme limitations conflicted with her minimal clinical findings, including minimal objective support (tender point findings) for limitations due to fibromyalgia. This was a specific and legitimate reason to discount her opinions. *See Tommasetti*, 533 F.3d at 1041.

In the absence of supporting clinical evidence, the ALJ permissibly inferred that Dr. Cruz relied largely on Plaintiff's self-reports. "If a treating provider's opinions are based 'to a large

extent' on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion." *Ghanim*, 763 F.3d at 1162 (quoting *Tommasetti*, 533 F.3d at 1041). Plaintiff argues that the ALJ's finding that her self-reports were based on drug-seeking behavior was mere speculation. Dkt. 12 at 15. Regardless of Plaintiff's motivation underlying her self-reports, Plaintiff did not assign error to the ALJ's discounting of her self-reports and thus the Court will not address it. Dkt. 12 at 1; *see Carmickle*, 533 F.3d at 1161 n.2 (declining to address arguments not raised with specificity in briefing).

The Court concludes the ALJ did not err by discounting Dr. Cruz's opinions based on conflict with her own treatment notes.

### 2. Plaintiff's Activities

Substantial evidence does not support the ALJ's finding that Plaintiff's activities contradict Dr. Cruz's opinions. The ALJ noted Plaintiff's report that she uses a computer for games, shopping, and Facebook, and cooks, "all of which are indicative of the ability to perform manipulation on a frequent basis." AR 27. There is no indication, however, that Plaintiff performs these activities more than 25% of the time, as Dr. Cruz opined she could. AR 788 (right hand and fingers limited to 25% of an 8-hour workday; left limited to 50%). Plaintiff reported cooking "almost never" and online shopping every "2-3 days." AR 300, 301. While she played Facebook games "often," it is pure speculation to interpret "often" as every day for more than two hours. AR 302.

### 3. Area of Expertise

The ALJ also erred in discounting Dr. Cruz's opinion based on a lack of expertise in psychiatry. The ALJ interpreted the opinion that Plaintiff's attention and concentration were

impaired as a psychiatric evaluation. AR 27 (Dr. Cruz "has no expertise or specialty in psychiatry" and Plaintiff said she was satisfied with management of her "psychiatric issues"). However, the form Dr. Cruz filled out simply asks if the patient's "symptoms" (such as pain) are severe enough to interfere with attention and concentration. AR 788. This is not a psychiatric evaluation, and thus Dr. Cruz's lack of specialization in psychiatry is irrelevant.

### 4. Harmless Error

Inclusion of erroneous reasons was harmless because the remaining reason, conflict with Dr. Cruz's own findings, was a specific and legitimate reason to discount her opinions. *See Molina*, 674 F.3d at 1117.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED and this case is DISMISSED with prejudice.

DATED this 26th day of March, 2019.

John C. Coughenour
UNITED STATES DISTRICT JUDGE